IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

RECEIVED
in Clerk's Office

AUG 20 2021

U.S. District Court
Middle District of TN

ERIC CHRISTOPHER FALKOWSKI,

    Petitioner,

- against -               Civil No. _____

UNITED STATES OF AMERICA,      (Criminal No. 3:16-CR-00176-2)

    Respondent.

PETITION PURSUANT 28 U.S.C. SECTION 2255, TO VACATE, SET ASIDE, OR

CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES NOW Eric Christopher Falkowski, Petitioner in the above-captioned case, to respectfully move this Honorable Court to vacate, set aside, or correct the underlying criminal judgment. Eric Christopher Falkowski ("Petitioner"), Federal Register Number ("Reg. No.") 24951-075, is an inmate in the custody of the Federal Bureau of Prisons (BOP), currently designated to Federal Correctional Institution ("FCI") Gilmer (County), in Glenville, West Virginia. He is serving an aggregate term of imprisonment of 24 years, 5 months, and 16 days. He is serving a 266-month term on each of the following counts, with the sentence on each out to run concurrent with one another: one count of Conspiracy to Distribute and Possess with Intent to Distribute fentanyl, Resulting in Death or Serious Bodily Injury, in violation of 21 U.S.C. Section 846; and nine counts of Distribution and Possession with the Intent to Distribute Fentany, Resulting Death or Serious Bodily Injury, in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(C). The "Amended Criminal Judgment in a Criminal Case" (Doc. No. 782) reflecting such a sentence was entered September 17, 2019.

Petitioner is serving an additional term of imprisonment of 188-months, for a judgment issued in the United States District Court for the Middle District of Florida ("MDFL") (See United States v. Falkowski, No. 6:16-CR-224-ORL-41DAB (M.D. Fla., Mar 16, 2017)). This Court found that the judgment imposed in MDFL, was imposed for Relevant Conduct in relation to the instant federal offense. Pursuant to U.S.S.G. Section

GROUND ONE: CUMULATIVE ERROR >>> INEFFECTIVE ASSISTANCE OF COUNSEL >>> LACK OF COMPETENT ADVICE REGARDING PLEA AGREEMENT & GUILTY PLEA >>> FAILURE TO INVESTIGATE CLEAR EVIDENCE OF PROSECUTORIAL MISCONDUCT >>> SIXTH AMENDMENT CLAIM >>> PROSECUTORIAL MISCONDUCT >>> SELECTIVE PROSECUTION >>> DUE PROCESS CLAIM >>> FOURTH AMENDMENT CLAIM >>> FIFTH AMENDMENT CLAIM >>> FOURTEENTH AMENDMENT CLAIM

Petitioner asserts that in his underlying criminal case, he was denied due process on account of clear cumulative error. He was denied effective assistance of counsel in violation of the Sixth Amendment - due to counsel's unreasonable advice surrounding the plea agreement, guilty plea, and other claims explicitly stated herein the petition. But for counsel's deficient performance, Petitioner would not have pleaded guilty but proceeded to trial. Petitioner asserts that government actors in the Middle District of Tennessee ("MDTN") and the Middle District of Florida ("MDFL") colluded to compel him to provide testimony and physical evidence against himself - in violation of the Fourth and Fifth Amendment. Additionally, he asserts, his MDFL counsel was ineffective based on her advice to waive constitutional safeguards against self-incrimination; and his MDTN counsel was ineffective based on his failure to suggest, investigate, and/or litigate the aforementioned claim, when such a claim was clearly available. (See United States v. Falkowski, No. 6:20-CV-915-ORL-41-GJK, (M.D. Fla., Filed May 26, 2020) (pending 28 U.S.C. Section 2255 petition.)

Ultimately, Petitioner argues that the United States acted intentionally to deprive him of a fair trial, first, by eliminating all plausible defenses, by eliciting his coerced testimony through proffer sessions in MDFL and MDTN; second, by compelling him to be a witness against himself (before the Grand and Petit Jury and during the aforementioned proffer sessions); and third, by weaponizing his attorneys (both in MDFL and MDTN) against him. Further, he asserts, he was selectively prosecuted and received disparate treatment in comparison to his co-conspirators/codefendants who also provided substantial assistance to the Government in the prosecution of others (his codefendants/co-conspirators who provided substantial assistance received 18 U.S.C. Section 3553(e) motions from the Respondent, while Petitioner received no such motion).

Although this Court will likely consider this claim "vague" or "conclusory," Petitioner request leave to evidence this argument with a memorandum or brief at a later date. Further, Petitioner acknowledges, the Sixth Circuit has repeatedly held that cumulative-error claims are not cognizable on habeas review. See Scott

v. Elo, 302 F.3d 598, 607 (6th Cir. 2002); Keith v. Mitchell, 455 F.3d 662, 679 (6th Cir. 2006); also Lorraine v. Coyle, 297 F.3d 416, 447 (6th Cir. 2002). However, Petitioner does not actually claim that, individually, his claims are without merit, but that the cumulative effect of so many errors of constitutional magnitude, make each individual claim that much more egregious and prejudicial.

SPACE  INTENTIONALLY  LEFT  BLANK

SPACE  INTENTIONALLY  LEFT  BLANK

GROUND TWO: INEFFECTIVE ASSISTANCE OF COUNSEL >>>COUNSEL'S FAILURE TO ENTER TIMELY APPEAL >>>

SIXTH AMENDMENT CLAIM

   Petitioner argues that counsel was clearly ineffective for failing to file a timely notice of appeal after

being requested to do so by Petitioner's wife, Holly Falkowski. The Court previously dismissed this claim as

"vague" or "conclusory," however, he now files a supporting affidavit to evidence the claim. See Exhibit A.




                    SPACE  INTENTIONALLY  LEFT  BLANK




                    SPACE  INTENTIONALLY  LEFT  BLANK

GROUND THREE: OVERBREATH & VOID-FOR-VAGUENESS CHALLENGE AGAINST UNITED STATES SENTENCING GUIDELINES SECTION 1B1.1 ("SERIOUS BODILY INJURY CLAUSE") >>> COUNTS TWO, FOUR, FIVE, AND SEVEN THROUGH TEN >>> FOURTEENTH AMENDMENT CLAIM >>> INEFFECTIVE ASSISTANCE OF COUNSEL >>> SIXTH AMENDMENT CLAIM

Petitioner argues that the United States Sentencing Commission stepped beyond the Congressional limits by defining the clause "serious bodily injury" - as relevant to the Controlled Substance Act, 21 U.S.C. Section 801 et seq. - to necessary include conduct well beyond its ordinary meaning (i.e., "medical intervention" and "hospitalization"), by way of its Guidelines commentary. See U.S.S.G. Section 1B1.1, cmt. 1(L). (Compare United States v. Havis, 927 F.3d 383,386-87) For instance, it has even been held, "[a]ctual injury need not occur for the enhancement to apply." United States v. Vivit, 214 F.3d 908, 920 (7th Cir. 2000). Additionally, the Guidelines do not adequately define the level of "medical intervention" or "hospitalization" needed to trigger the enhancement - as medical intervention and hospitalization can be rendered for ailments in which a patient would recover without such treatment (e.g., hospitals are regularly inundated with patients who seek treatment or hospital admittance for benign ailments - such as common colds, body aches and pains, and the like - for which no such treatment is actually necessary). Thus, the relevant Guideline and commentary are equally vague; and counsel was ineffective for, both, not litigating such a claim and for advising Petitioner to enter a guilty plea to the overbroad statute. If not for counsel's unprofessional conduct, Petitioner would not have pleaded guilty but proceeded to trial.


SPACE INTENTIONALLY LEFT BLANK

GROUND FOUR: SUBSTANTIVE & PROCEDURAL UNREASONABLENESS OF SENTENCE >>> ABUSE OF DISCRETION >>> CONCURRENCY & MANDATORY MINIMUM ISSUE >>> PLAIN ERROR >>> INEFFECTIVE ASSISTANCE OF COUNSEL >>> SIXTH AMENDMENT CLAIM

The sentence is unreasonable based on the Court's failure to adequately or clearly specify the the starting Guidelines range, before departing downward upon granting the Government's motion under U.S.S.G. Section 5K1.1(a), and for relevant conduct pursuant to 5G1.3. Although the Government discussed the starting point being "Life" and difficulties quantifying what "Life" meant as a starting point for the Court's calculations (Sent. Tr., pp. 21, at 17-19) (the Court also questioned its own authority to depart under 5G1.3, to account for time served; see Sent. Tr., pp. 38, at 10-15), the Court arbitrarily selected the sentence of 300 months as the starting point (Sent. Tr., pp. 47, at 19-21), without elaborating how it arrived at that number, before granting the aforementioned downward departures.

Further, the sentencing court considered a panoply of factors beyond those expressly identified in Section 5K1.1(a) ("substantial assistance factors"), which was improper in assessing the extent of the downward departures it granted pursuant to 5K1.1(a). Petitioner reiterates, a downward departure under 5K1.1 can only be based on these substantial assistance factors, and thus, not the advisory Guidelines ranges, defendant's role in the offense and how it compares to that of codefendants/co-conspirators, relevant conduct arising out of a related offense, sentence disparities among similarly situated defendants, and the like. See, e.g., United States v. Bullard, 390 F.3d 413, 417 (6th Cir. 2004); United States v. Bostic, 371 F.3d 865, 876-77 (6th Cir. 2004); and also United States v. Turnbough, 425 F.3d 1112, 1115 (8th Cir. 2005).

Due to the fact the sentencing court clearly considered factors beyond those identified in Section 5K1.1 - which again, is improper in assessing the extent of a Section 5K1.1 departure - this Court should not be convinced that the sentencing court's improper considerations of Petitioner's importance in regards to the instant offense (Court: "Joedon can't do anything unless Eric chooses to come up here with the pills... [and] the fentanyl[;]" see Sent. Tr., pp. 19, at 20-21 & 3), unproven relevant conduct (death of Catherine Brady and Sabrina Bryant; the Court maintained that it had to balance "the fact that we have at least one or two deaths in Florida for his relevant conduct activity.... And his voluntary choice to come up to Tennessee from Florida, I certainly can't ignore all that[;]" see Sent. Tr., pp. 18, at 11-18), and criminal history (Sent. Tr., pp. 44, at

5-9) rendered a substantively and procedurally sound sentence.

Additionally, Petitioner argues that his sentence is unreasonable, as it is disparate in comparison to his codefendants/co-conspirators who also provided substantial assistance to the Government - but received downward departures greater than 50% below the mandatory minimum - while Petitioner received an aggregate sentence of 4 years, 5 months, and 16 days greater than the mandatory minimum. Additionally, only one of three codefendants convicted at trial received a sentence greater than Petitioner's - Joedon Bradley. It is relevant to note: Preston Davis, Davi Valles, Lakrista Knowles, and Bradley were also responsible for relevant conduct in MDFL, but this conduct went uncharged in that jurisdiction. Ultimately, Bradley received a sentence of 30-years confinement in comparison to Petitioner's term of 24 years, 5 months, and 16 days - despite the fact that Bradley did not assist the Government in his own prosecution (as he proceeded to trial), much less the prosecution of others - thus, Petitioner asserts that his sentence is disparate for the aforementioned reasons.

Further, Petitioner argues, sentencing court plainly erred by acting on the assumption that it lacked the authority to impose a sentence that was "fully" concurrent, pursuant to U.S.S.G. 5G1.3, by reducing his sentence below the statutory mandatory minimum, to account for time served on his MDFL sentence for a related offense. (See Sent. Tr., pp. 38, at 10-15). Ultimately, counsel was ineffective for not objecting to the aforementioned errors despite being given an opportunity by the sentencing court to do so. (The Court stated: "Counsel for either side know of any reason not previously made where the sentence I have not announced should not be imposed." See Sent. Tr., pp. 49, at 13-15; and "Have I addressed the arguments, all of the arguments on both sides?" See Sent. Tr., pp. 50, at 2-3.) Petitioner's counsel, subsequently, made no objections to the clearly substantively and procedurally unreasonable sentence, despite being given two clear opportunities to do so by the sentencing court.

## GROUND FIVE: INEFFECTIVE ASSISTANCE OF COUNSEL >>> SIXTH AMENDMENT CLAIM >>> ACTUAL INNOCENCE >>> COUNT SIX >>> INVOLUNTARINESS & UNKNOWINGNESS OF PLEA

Petitioner argues, he is innocent of Count Six of the indictment. He asserts that counsel never informed him of the fact that Anthony Wheeler's toxicology report concluded that his death was caused by a combination of illegal drugs, not solely the fentanyl distributed as part of this case. (See Pre-Sentence Investigation Report ("PSR", Page 12, Footnote). But for counsel's deficient performance, Petitioner would not have pleaded guilty but proceeded to trial. Please note, counsel never review the revised PSR with Petitioner. Petitioner concedes, counsel did review the initial PSR with him, nearly one year before the date of sentencing (July 1, 2019). Petitioner read the PSR to himself, but does not recall the inclusion of any statement regarding the results of Wheeler's toxicology report.

The fact that counsel did not consult with Petitioner regarding the revised PSR, can be proven based on the fact that Petitioner was housed at the Dekalb County Jail, Fort Payne, Alabama, at the time the revised PSR was issued; Dekalb County Jail records would indicate that the only attorney/client visit counsel made, was before the revised PSR was issued. Additionally, neither this Court nor counsel mailed a copy of the PSR to Petitioner. Some time after the sentencing hearing, on or about June of 2020, Petitioner contacted counsel via email from United States Penitentiary (USP) Lewisburg, and requested a copy of the revised PSR. Counsel informed Petitioner that it would be unwise to possess a copy in prison but, in the alternative, mailed pages 6-15 and 32 of the revised PSR to him.

Only after Petitioner reviewed the aforementioned PSR excerpts, did he learn that Wheeler died of a combination of illegal drugs, not solely the fentanyl distributed as part of this case. Thus, counsel was ineffective for not advising Petitioner about the circumstances surrounding Wheeler's death. If Petitioner were made aware of Wheeler's toxicology report, he would not have plead guilty but proceeded to trial on all counts of the indictment as charged. As relevant to this argument, the Government voluntarily dismissed Count Six against Joedon Bradley, before trial. Petitioner argues, the Government did not do this out of benevolence or mercy, but due to the fact jurors would infer reasonable doubt regarding the remaining counts, based on the fentanyl distributed in this case not being the but-for-cause of Wheeler's death in Count Six.

GROUND SIX: PROSECUTORIAL MISCONDUCT >>> DUE PROCESS VIOLATION >>> FOURTH AMENDMENT CLAIM >>> FIFTH AMENDMENT CLAIM >>> FOURTEENTH AMENDMENT CLAIM >>> INEFFECTIVE ASSISTANCE OF COUNSEL >>> SIXTH AMENDMENT CLAIM

Petitioner further argues that the Government impermissibly used Petitioner's self-incriminating proffer statements (specifically, the PIN code to his iPhone 6s Plus and the data extracted from the phone) and the impeached testimony of Preston Davis to indict. The Government's entire case was established by the aforementioned impermissible evidence. Sans impermissible evidence - which, consequently, should be suppressed - the Government's case would be too weak to muster a conviction at trial.

Petitioner learned of Davis' impeached testimony after an evidentiary hearing was held in the prosecution of Joedon Brady, in which Davis testified. Davis essentially swore, Petitioner was the lone manufacture of the counterfeit pills which were distributed during the instant offense (July 5-6, 2016). Davis' averred that Petitioner distributed the pills directly to him, before Davis distributed the pills to Davi Valles, Jr. However, other reliable evidence in the record contradicts Davis' testimony. The true account of the drug distribution "chain" conspiracy, involves Bradley manufacturing the pills and subsequently distributing the pills to a group of individuals (unknown to Petitioner) from Memphis, Tennessee. The individuals from Memphis backed out of the deal, as they were unpleased with the quality of the pills, and demanded a refund. Bradley then order Davis to retrieve the pills, sell them elsewhere, and refund the money to the individuals from Memphis. Davis ultimately sold the pills to Valles, and the rest is history (as established by the record).

It may be that the Government did not know that Davis' testimony was impeached at the time the Government called him to testify before the Grand Jury, in order to obtain Petitioner's indictment. However, it is clear that by the time of the trial of United States v. Barrett, et al., the Government clearly knew that Davis' testimony was impeached. This is evinced by the fact the Government strategically chose not to call Davis' as a witness at trial. (Davis' testimony likely would have cast a reasonable doubt on the Government's case at Bradley's trial and exculpated him.) Ultimately, Davis' testimony was deemed unreliable at Bradley's evidentiary hearing, as it was clearly contradicted by reliable evidence or testimony; if this testimony was unreliable or impeached at Bradley's evidentiary hearing, it was unreliable or impeached at the time of Petitioner's indictment. It is now clear that the Respondent knew that Davis' testimony was impeached, but

did nothing to correct the deficiency of the indictment. Consequently, Petitioner's indictment should be dismissed, due to the fact the evidence used to obtain his indictment, consist solely of evidence gained in violation of his constitutional Due Process rights. Further, although counsel knew of Davis' testimony at Bradley's evidentiary hearing (and, presumably, its relevance to Petitioner's indictment), he did not share the importance of this fact with Petitioner. If Petitioner were advised by counsel of the aforementioned facts, he would have timely requested an evidentiary or suppression hearing, or attempted to timely withdrawal his guilty plea due to involuntariness and unknowingness.

SPACE INTENTIONALLY LEFT BLANK

## STATEMENT REGARDING REQUEST FOR EQUITABLE TOLLING

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). Falkowski concedes, a habeas petitioner is only entitled to equitable tolling "if he shows '(1) that he has been pursing his rights diligently and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). Falkowski recognizes, the Sixth Circuit has held that "the doctrine of equitable tolling is restricted and to be carefully applied[,]" and that the burden is on a habeas petitioner to show that he is entitled to the equitable tolling of the limitations period. Seay v. Tenn. Valley Auth., 339 F.3d 454, 468 (6th Cir. 2003) (citing Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)). Additionally, Under Section 2255(f)(4), "[t]he date on which the limitations clock [begins] to tick is a fact-specific issue." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). For this reason, an evidentiary hearing may be required to determine the facts supporting the due diligence exception. See Id. at 190-91; Aron v. United States, 291 F.3d 708, 714-15 (remanding for evidentiary hearing on whether petitioner exercised due diligence). Although the equitable tolling doctrine is to be sparingly applied, the instant case contains several compelling "reasons" to warrant its application. These reasons are enumerated below.


SPACE INTENTIONALLY LEFT BLANK

Reason One: Defective Pleading by Petitioner

The Sixth Circuit has held that equitable tolling applies where the petitioner has filed a defective pleading. See, e.g., Truit v. Cty. of Wayne, 148 F.3d 644, 648 (6th Cir. 1998) (relying on Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 435, 457-58. 112 L. Ed. 2d 435 (1990) ("We have allowed equitable tolling in situations where the claimant actively pursued his judicial remedies by filing a defective pleading during the statutory period")). In the instant case, the District Court entered the "Amended Criminal Judgment in a Criminal Case" (Doc. No. 782) on September 17, 2019. Thus, under "ordinary" circumstances, the statutory one-year limitations period would not be considered exceeded until after September 17, 2020, due to the fact Falkowski did not appeal the criminal judgment. However, on or about July 27, 2020 - well before the lapse of the statutory limitations period - he filed a defective collateral attack of the judgment ("Motion to Reopen [Judgment] Under Rule 60(b)") (Doc. No. 815; "Rule 60(b) Motion"). This Court noted, after Petitioner filed "Petition for Compassionate Release, or Reduction in Sentence, Pursuant to the First Step Act of 2019" (Doc. No. 823) and "Motion for Reconsideration of Petition for Reduction in Sentence or Compassionate Release" (Doc. No. 825), that "[t]he orderly disposition of cases therefore requires waiting for a ruling from the Sixth Circuit before this Court proceeds to rule on any motion seeking to modify the defendant's sentence." United States v. Walls, 455 F. Supp. 3d 461, 464 (E.D. Mich. 2020). Thus, relying on this Court's own "ORDER" (Doc. No. 826), he could not have filed the instant petition until after the disposition of the Rule 60(b) Motion.

The Rule 60(b) Motion was denied July 30, 2020 (Doc. No. 816) and Falkowski timely appealed to the Sixth Circuit (Doc. No. 817). The appeal to the Sixth Circuit (United States v. Falkowski, No. 20-5936, 2021 U.S. App. LEXIS 16796 (6th Cir. 2021)) was ultimately denied. Falkowski then timely filed a "Petition for Rehearing or Rehearing En Banc," which was subsequently denied July 29, 2021. Although he could have filed for writ of certiorari to the Supreme Court of the United States, he acknowledge to do so would be frivolous, as he concedes, Rule 60(b) was not the most judicious manner in which to collaterally attack the judgment - especially when section 2255 remained wholly availed to him.

It is relevant to note, Falkowski's petition for rehearing asserted that Rule 60(b) was in fact availed to him, due to the fact that it attacked the integrity of the Government's writ of habeas corpus ad prosequendum, as writs of habeas corpus are civil procedures for generally all intents and purposes. This is true for, even, the

writ of habeas corpus ad prosequendum and ad testifcandum. Thus, the Federal Rules of Civil Procedure are not wholly inapplicable in the context of habeas corpus proceedings. Browder v. Director, Dep't of Corrections, 434 U.S. 257, 98 S. Ct. 556, 54 L. Ed. 2d 521 (1978).

At the heart of Falkowski's argument on collateral attack, lies his assertion that government representatives from MDFL and MDTN, colluded to compel him into waiving his privilege against self-incrimination through an elaborate ruse. Instrumental to this ruse was the use of the writ of habeas corpus ad prosequendum to remove him from MDTN, to answer a criminal complaint in MDFL, only after he refused to provide the Government in MDTN with the PIN code needed to access the data stored on his iPhone 6s Plus. Whatsmore, the Government in MDFL offered Falkowski a favorable plea agreement if he provided certain assistance and revealed the aforementioned PIN code. Falkowski revealed the PIN code and fulfilled the other conditions of the plea agreement. However, the Government in MDFL reneged on the terms of the plea agreement by not recommending the stipulated 60-month term of confinement at sentencing.

Further, once Falkowsk revealed the PIN code, the Government in MDFL shared the PIN code with the Government in MDTN. The Government in MDTN then indicted him in its jurisdiction, with information gleaned from the iPhone. Both Falkowski's prosecution in MDFL and MDTN were initiated through the granting of the writ of habeas corpus ad prosequendum. Again, the writ of habeas corpus ad prosequendum is civil in nature; no reasonable jurist would contest this fact. However, this writ is solely used to remove prisoners to the proper jurisdiction for prosecution in criminal proceedings. The fact that the writ of habeas corpus ad prosequendum is civil nature was never in dispute. The actual question left unanswered, regarding the aforementioned Rule 60(b) Motion, is whether the writ's prior application in a criminal proceeding, avails a defendant of the use of certain Federal Rules of Civil Procedure (more specifically, Rule 60(b)). However, Falkowski contends, such a question is best left to be decided by the great minds of the appellate courts.

Although the writ of habeas corpus ad prosequendum is quasi-criminal in some aspects, it is still, again, civil in nature. Thus, because Falkowski's extradition proceeding determination was a transfer from a civil proceeding to a criminal proceeding, it is abundantly clear that the applicable and relevant rules of civil procedure, such as Rule 60(b), actually apply. Compare United States v. D.D.B., 903 F.3d 684 (7th Cir. 2018) (Appellant juvenile timely appealed, under Fed. R. App. P. 4(b), because an appeal from an 18 U.S.C. Section 5032 transfer proceeding determination was a transfer from a civil proceeding to a criminal one-thus the timeline for civil proceedings applied.) Falkowski maintains that Rule 60(b) was availed to him to reopen the judgment, because

of habeas corpus ad prosequendum to implement a stratagem in which to coax him into waiving his privilege against self-incrimination. If it were not for his extradition to MDFL, where he was offered a plea agreement that was virtually too good to refuse, he would not have waived his protection against self-incrimination in either the district, but proceeded to trial. Key to the plea agreement in the MDFL, was the Government's promise to recommend 60-months imprisonment, which, again, the Government made in intentional bad faith.

Again, although Falkowski maintains that Rule 60(b) was actually availed to him based the Government's writ of habeas corpus ad prosequendum, he reiterates, the Rule 60(b) Motion was defective, because Rule 60(b) was not the most expedient manner in which to attack the judgment. However, he only makes this argument because the defective Rule 60(b) pleading and subsequent appeal, clearly evince that he diligently pursued his rights during the period in which he request equitable tolling.

SPACE INTENTIONALLY LEFT BLANK

Reason Two: Demonstration of Due Diligence While Gathering Evidence to Support Claims

To use a "baseball analogy," the Rule 60(b) Motion was the equivalent of a "bunt" to get Petitioner's "runners" on base; meaning, Falkowski filed the Rule 60(b) Motion in order to demonstrate due diligence while he gathered the necessary evidence to support his claims. The evidence, he contends, lies in the pending "ruling" of the related MDFL case. Despite any contentions by the Government, these cases are inextricably linked. Although he has yet to secure a ruling in the related case, favorable or otherwise, he is awaiting a response by the Government, which is due August 19, 2021. In the instant proceeding, without evidence to support his claims of prosecutorial misconduct, inter alia, which can only be gained through a favorable ruling in the MDFL case, Falkowski concedes, his claims on collateral attack will seem "patently false, frivolous, or contradicted by the record," and his claims will likely be denied. In Johnson v. United States, 544 U.S. 295, 308, 125 S. Ct. 1571, 1580, 161 L. Ed. 2d 542 (2005), the Supreme Court held that, for purpose of Section 2255(f)(4), the "facts" supporting a claim may include court rulings or the legal consequences of know facts. In such circumstances, the one year is triggered by the notice of the ruling, so long as the prisoner has shown "due diligence" in seeking that ruling. Id., 544 U.S. at 308, 125 S. Ct. at 1580.

Additionally, on or about April 13, 2019, FCI Estill, South Carolina (where Petitioner was designated at the time), was struck by a tornado and severely damaged. Consequently, Petitioner and nearly 1000 other inmates were transferred to United States Penitentiary ("USP") Lewisburg. During Petitioner's transfer to USP Lewisburg (on or about April 15, 2019), he was separated from his personal property - this includes all legal documents and filings related to this case. While at USP Lewisburg, Petitioner requested access to his legal documents numerous times. However, all of these requests went unanswered. Subsequently, on or about December 10, 2020, Petitioner was transferred to FCI Gilmer. On or about March 10, 2021, Petitioner finally received the aforementioned property and relevant documents from FCI Gilmer prison staff. Thus, Petitioner could not have filed a successful habeas corpus petition any earlier.

Further, the Rule 60(b) Motion served an additional purpose: to test the level of bias, belligerence, or opposition of, both, this Honorable Court and the Government toward Petitioner. Falkowski first sought to determine which judge would be assigned to the case, as the Honorable Jack Zouhary (sentencing judge) was a "visiting" district judge. Once Petitioner determined which judge was assigned to the case, he was able

to assess or determine the weight of evidence necessary to support his claims of prosecutorial misconduct and ineffective assistance of counsel before this Court. Considering the fact this Honorable Court previously denied his claim of ineffective assistance of counsel as "entirely conclusory, with absolutely no accompany allegations (let alone evidence) of supporting facts" (Doc. No. 816, at 2), although Falkowski was extremely specific in how his defense counsel failed to file a timely notice of appeal, he discovered that he would need evidence that was not just clear and convincing, but virtually irrefutable, to meet the already high burden for supporting a claim of prosecutorial misconduct, which-at this juncture-he has yet to obtain but is diligently pursuing.




SPACE INTENTIONALLY LEFT BLANK

5G1.3(b), the Court adjusted the sentence to account for time previously served on the MDFL judgment, and imposed the sentence concurrently. With consideration of Good Conduct Time (GCT), his projected release date is July 9, 2037.

Petitioner did not file a direct appeal of the criminal judgment, nor did he file for writ of certiorari to the United States Supreme Court in relation to the judgment. He filed a "Motion for Leave to File Untimely Notice of Appeal" (Doc. No. 812), and a "Motion to Reopen [Judgment] Under Rule 60(b)" (Doc. No. 815; "Rule 60(b) Motion"). Subsequently, both of these motions were denied. Petitioner appealed the denial of the Rule 60(b) Motion; that too was denied. He then requested the rehearing of the Rule 60(b) Motion, which was also denied (July 29, 2021). Petitioner now presents the instant collateral attack of the criminal judgment, and request equitable tolling of the one-year statutory limitations period, based on the reasons presented herein.

## STATEMENT OF THE ARGUMENT

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1952). Under this Circuit's liberal pleading rules, during the initial stages of litigation, a district court must construe the complaint in favor of the petitioner, accept the allegations of the pleading as true, and determine whether petitioner's factual allegations present plausible claims. Petitioner asserts, the pleading need not contain "detailed" factual allegations; but concedes, its "'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" New Albany Tractor, Inc. v. Louisville Tractor, Inc. 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Ultimately, a petitioner is not entitled to relief when "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statement of acts." Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). The standard for holding an evidentiary hearing is similar. "where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of petitioner's claims." Martin v. United States, 889 F.3d 827, 832 (6th Cir. 2018) (quoting Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999)). Further, "[w]hen a [petitioner] presents an affidavit containing a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it, the [petitioner] is entitled to an evidentiary hearing." (quoting

Huff v. United States, 734 F.3d 600, 607 (6th Cir. 2013).




SPACE INTENTIONALLY LEFT BLANK




SPACE INTENTIONALLY LEFT BLANK

PRAYER FOR RELIEF:

WHEREFORE, Eric Christopher Falkowski, respectfully prays for this Honorable Court to grant relief as follows: enter a standing order appointing counsel; enter notice of appeal to the Sixth Circuit based on former counsel's failure to enter timely notice; ORDER Respondent to provide Petitioner with all Grand Jury minutes related to his indictment, transcripts of the trial of United States v. Barrett, et al., transcripts of any and all evidentiary or suppression hearing held in the prosecution of codefendants or co-conspirators (especially that held during the prosecution of Joedon Bradley), any and all relevant proffer session notes (especially proffer session notes related to Preston Davis); vacate, set aside, or correct the sentence; or provide any other relief in which Petitioner is entitled.

SWORN DECLARATION OR AFFIDAVIT OF PETITIONER:

In accordance with the provisions of 28 U.S.C. Section 1746, I, Eric Christopher Falkowski, do hereby affirm or certify, under penalty and pains of perjury, that the statements and claims presented therein the instant petition are true and correct to the best of my ability.

The foregoing petition was executed on this ___16th___ day of August, 2021, in Glenville, West Virginia.

Duly sworn,

Eric Christopher Falkowski
Reg. No. 24951-075
Federal Correctional Institution - Gilmer
PO Box 6000
Glenville, WV 26351-6000

Petitioner, pro se

Exhibit A

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

United States v. Falkowski, Appeal No. 20-5936
Criminal No. 3:16-cr-00176-2

----------------------------------------------------------------X

AMENDED DECLARATION OF HOLLY FALKOWSKI

In accordance with the provisions of United States Code, Section 1746 of Title 28, I, Holly Falkowski, do hereby make the following Declaration:

1.    I am over 18 years of age. I reside in Bangor, in the Commonwealth of Pennsylvania. I am fully competent to make this Declaration and have person knowledge of the facts stated herein. I am the lawful spouse of Eric Falkowski, Appellant in the above-captioned case. I make this Declaration in support of the facts alleged in "Brief of Pro Se Appellant."

2.    After July 1, 2019, but before July 15, 2019, I had a telephonic conversation with David I. Komisar, former counsel for Appellant. During this conversation, I asked Komisar if he was still in possession of Appellant's wedding band ("ring"). Komisar stated that he was. I asked that Komisar forward the ring to Appellant at the Grayson County Detention Center ("GCDC"), in Leitchfield, Kentucky, before July 15, 2019. I can easily recall this fact because when a new inmate arrives at GCDC, he is allowed to receive property from an outside source, as long as the property is on the list of items approved for retention by the inmate. Wedding rings without gemstones are among these items. Appellant was transferred to and arrived at GCDC on July 1, 2019, on the day of the sentencing hearing. Inmates only have two weeks from the date of arrival to receive the property. If beyond this period, the property will be denied for retention and/or returned to sender. Since Appellant received the ring from Komisar in time, it can be concluded that this conversation occurred before July 15, 2019.

3.    During the same conversation, I also informed Komisar that Appellant wished to appeal the judgment. Komisar essential stated that an appeal was impermissible due to the fact that Appellant waived his appeal rights as part of the plea agreement he entered with the Government.

4.    I, Holly Falkowski, do hereby declare that the statements and claims presented therein are true and correct. I certify that the foregoing is factual.

Executed in Bangor, Pennsylvania, on the 30th day of October, 2020.

Respectfully submitted,

/s/ Holly Falkowski

Holly Falkowski
Declarant/Affiant



24951-075
Eric C Falkowski
Reg. No. 24951-075
FCI Gilmer
PO Box 6000
Glenville, WV 26351-6000
United States

Charleston P&DC 253

TUE 17 AUG 2021 AM

**RECEIVED**
in Clerk's Office

AUG 20 2021

U.S. District Court
Middle District of TN

24951-075
Court Clerk
United States Courthouse
801 Broadway
Rm 800
Nashville, TN 37203-3816
United States